UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDREW SCHAFF,

                              Plaintiff,

    v.                                                    5:22-CV-302 (TJM/ATB)

BRIGHTON TOWERS RESIDENT'S
ASSOCIATION, et al.

                              Defendants.

ANDREW SCHAFF, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent to the court for review a pro se complaint together with an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2).

**I.**     **In Forma Pauperis ("IFP") Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether

the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II.   Complaint**

Plaintiff commenced this action pursuant to Title VI of the Civil Rights Act. (Complaint ("Compl.") at 1) (Dkt. No. 1). According to the complaint, plaintiff alleges that the defendant Brighton Towers Resident's Association ("BTRA") "has not acted as

a legitimate Tenant Association under the Federal Code of Tenant Associations." (Compl. at 2). He also states that the BTRA "fraudulently misrepresents its members." (*Id.*). Specifically, plaintiff complains that the BTRA does not work together to improve the quality of life for its members with regard to harassment, repairs or complaints; and that it improperly redirects member complaints to management, because the BTRA "only promotes activities and entertainment for the residents." (*Id.*).

In September 2021, plaintiff "spoke out" and raised unspecified questions at the BTRA members meeting. (*Id.* at 3). Defendant Dennis Hough, the Vice President of the BTRA, responded that the association "was sponsored by HUD and was not required to register and [sic] exempt from all laws." (*Id.*). The board of officers subsequently sent a memorandum to "Syracuse Management in violation of plaintiff's rights, and in violation of federal laws." (*Id.*).

Plaintiff further alleges that he was appointed to the position of Vice President by defendant Cindy Curtis, the President of the BTRA, during the February 2022 members meeting. (*Id.*). At the same meeting, defendant Sharron Redmond "created a commotion" with defendant Hough "over a matter with bedbugs." (*Id.*). Defendant Redmond proceeded to complain "to management, seeking the removal of . . . [defendant] Hough" from office. (*Id.*). After a meeting of the Board of Directors, it was voted upon to dismiss defendant Redmond from her position as Building Representative II. (*Id.*). Plaintiff states that defendant Penny Mutter, who served as Building Representative I, "did not agree" with the dismissal of defendant Redmond, and complained to "the management." (*Id.*). Defendant Mutter "complained that if the

3

plaintiff was not voted in as Vice President, then the letter of dismissal would be null and void, as the plaintiff signed the letter." (*Id.*).

Plaintiff alleges that Syracuse Management "demanded a meeting in violation of Federal Code," during which the management company's representative, Lisa Barletta, stated that defendant Redmond's dismissal letter violated fair housing laws and would be null and void. (*Id.*). Ms. Barletta also stated that plaintiff was not legally appointed to the position of Vice President, and instructed defendant Curtis to remove plaintiff from office. (*Id.*).

In March 2022, plaintiff submitted a "letter of intention" to defendant Curtis as a courtesy, to "see if there was an opportunity to resolve violations involving the plaintiff, and his rights under state and federal laws." (*Id.* at 4). Defendant Curtis provided the letter to Syracuse Management on behalf of Rochester Management. (*Id.*). The management company responded with a request to meet regarding the letter of intention. (*Id.*). Plaintiff also filed a complaint/appeal with HUD regarding the ruling that the dismissal letter and plaintiff's appointment as Vice President were violations of fair housing laws. (*Id.*). "A review by HUD . . . was that bedbugs was not a protected class, the meeting in its self [sic] was a violation of the plaintiff['s] rights under housing [sic], and any ruling would violate Federal Code." (*Id.*). Plaintiff states that he has made "at least three attempts" to resolve his issues with the BTRA, and "each time the association has failed to respond to the plaintiff; and responds to management instead." (*Id.*).

In addition to a Title VI cause of action, plaintiff claims that he was

discriminated against under Section 109 of the Housing and Community Development Act of 1974. (*Id.*). He also seeks relief pursuant to 24 C.F.R. §§ 245.100 – 245.110. (*Id.*). Plaintiff's prayer for relief is purely injunctive, requesting that this court compel the BTRA to comply with its by-laws and the Federal Code of Tenant Associations, and refrain from involving management in the association's business. (*Id.* at 5). In the event the BTRA "will not comply with both state and federal laws," plaintiff asks this court to issue an order dissolving the association. (*Id.*).

### III. Title VI

"Title VI provides that '[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.' " *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013) (quoting 42 U.S.C. § 2000d). To state a claim for a violation of Title VI, a "plaintiff must allege that: (1) [defendant] received federal financial assistance, (2) [plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [defendant] discriminated against [plaintiff] on the basis of race, color, or national origin in connection with that program or activity." *Commodari v. Long Is. Univ.*, 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000), *aff'd*, 62 Fed. App'x 28 (2d Cir. 2003). "A claim under Title VI cannot proceed without th[e] requisite nexus" between a federally funded program or activity and the alleged discrimination. *James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 306 (E.D.N.Y. 2017) (citing *McCrudden v. E-Trade Fin. Corp.*, No. 13 Civ. 8837, 2014 WL 3952903, at *4

(S.D.N.Y. Aug. 12, 2014).

At the outset, plaintiff's complaint does not specifically allege that the BTRA received federal financial assistance to sustain his claim under Title VI. Although the complaint includes a vague statement by one of the defendants, representing that the BTRA was "sponsored by" the U.S. Department of Housing and Urban Development, this comment falls short of actually pleading that the BTRA was in fact receiving federal funds. (Compl. at 3). Moreover, plaintiff appears to contest this representation, to some extent, in his pleading. (*Id.*).

Even if this court were to find that plaintiff sufficiently pleaded that the BTRA was receiving federal funds, plaintiff wholly failed to allege that he was discriminated against on the basis of his race in connection with the BTRA. The complaint makes no reference to plaintiff's race, nor does it even remotely suggest that any action taken by the BTRA was motivated by plaintiff's race. Thus, because plaintiff has not alleged any facts from which race-based discriminatory intent reasonably could be inferred, his discrimination claim must be dismissed. *See Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d at 532–33 (dismissing complaint where plaintiff failed to allege that defendant referred to his race, or "any other fact from which [race-based] discriminatory intent reasonably could be inferred"); *Sanders v. Grenadier Realty, Inc.*, No. 08 Civ. 3920, 2009 WL 1270226, at *5 (S.D.N.Y. May 6, 2009) (dismissing Title VI claim because plaintiffs gave no indication that their "race was accorded special weight" in determining who received rent subsidies, "thus making it a 'substantial' or 'motivating factor' ").

Finally, it is well settled that the proper defendant in a Title VI claim is "the entity that receives federal funding[.]" *See Barker v. Women in Need, Inc.,* No. 20-CV-2006, 2020 WL 1922633, at *3 (S.D.N.Y. Apr. 20, 2020) (quoting *TC v. Valley Cent. School Dist.*, 777 F. Supp. 2d 577, 593 (S.D.N.Y. 2011)).  Title VI "does not provide for individual liability[.]" *Id.* (quoting *Verdi v. City of New York*, 305 F. Supp. 3d 532, 542 (S.D.N.Y. 2018)); *see also Eldars v. State Univ. of New York at Albany,* No. 1:19-CV-0801(GTS/DJS), 2020 WL 2542957, at *8 (N.D.N.Y. May 19, 2020), *aff'd sub nom.*, No. 20-2693, 2021 WL 4699221 (2d Cir. Oct. 8, 2021) (citing *TC v. Valley Cent. Sch. Dist.,* 777 F. Supp. 2d at 593-94) (finding that individuals could not be held liable under Title VI in either a personal or official capacity).  Accordingly, individual defendants Curtis, Hough, Miller, Mutter and Redmond cannot be held liable for any alleged violation of Title VI, and the complaint should be dismissed as against them.

**IV.   Remaining Statutory/Regulatory Claims**

Plaintiff has also asserted he is entitled to relief under the Housing and Community Development Act of 1974 (the "HCDA") based on his sex, as well as various U.S. Department of Housing and Urban Development ("HUD") regulations cited within his complaint.  (*See* Compl. at 4).  With respect to the former, it is well settled that the HCDA does not create a private right of action under which plaintiff may obtain relief.  *See Al-Qadaffi v. Acacia Network,* No. 16-CV-05423, 2016 WL 6072374, at *2 (E.D.N.Y. Oct. 17, 2016) (". . . there is no private right of action under the HCDA; its enforcement lies entirely with the Attorney General of the United

7

States."); *Rodriguez v. N.Y. State Dep't of Parole*, No. 19-CV-643, 2019 WL 6973568, at *15 (S.D.N.Y. Dec. 20, 2019), *report and recommendation adopted*, 2020 WL 257420 (S.D.N.Y. Jan. 17, 2020) ("However, the HCDA 'does not confer a private right of action upon individuals' ") (citations omitted).

Nor is there any authority supporting plaintiff's private right to enforce HUD regulations in this venue. The regulations cited by plaintiff concern issues relevant to tenants residing in housing funded by HUD, including the rights of tenants to organize and recognition of tenant organizations. *See* 24 C.F.R. §§ 245.100-245.110. "However, the Second Circuit [has] held . . . that there is generally no private right of action to enforce HUD regulations." *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 274 (S.D.N.Y. 2014) (citing *Taylor v. Housing Authority of New Haven,* 645 F.3d 152, 153 (2d Cir. 2011)). Other circuit courts that have addressed this issue have come to the same conclusion. *See Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 425 (3d Cir. 2004) (holding that Section 504 of the Rehabilitation Act did not provide a private right of action to enforce HUD regulations); *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) (stating there is no "express or implied right of action" exists for violations of HUD regulations); *Hill v. Group Three Hous. Dev.*, 799 F.2d 385, 394 (8th Cir. 1986) (after reviewing the HUD statutes, regulations, and handbook guidelines, the court held that plaintiffs had no implied private right of action under the Section 8 program); *Guesnon v. McHenry*, 539 F.2d 1075, 1077 (5th Cir. 1976) (there is no "precedent for the proposition that a private cause of action exists to remedy a violation of [a] HUD regulation.").

Although the particular HUD regulations cited in plaintiff's complaint were not specifically addressed in the aforementioned opinions, this court has found no precedent suggesting that they constitute an exception to the general rule as recognized throughout the circuits. In fact, the limited cases discussing these regulations are consistent with the circuit courts' findings. *See Hyland v. Off. of Hous. & Cmty. Dev.*, No. 15-00504, 2016 WL 5844604, at *5 (D. Haw. June 9, 2016) ("Plaintiff's claim against Defendants for violation of 24 C.F.R. § 245.100 is futile. As detailed above, there is no private right of action for purported violations of Title 24."). Accordingly, the court finds the foregoing cases persuasive and concludes there is no private cause of action to enforce 24 C.F.R. §§ 245.100-245.110.

## V. **Opportunity to Amend**

### A. **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. **Application**

The claims based on the Housing Community Development Act of 1974 and 24 C.F.R. §§ 245.100-245.110 may be dismissed with prejudice as against each named defendant, because these statutes and regulations do not provide for private causes of action. At this juncture, the court will also recommend dismissing plaintiff's Title VI action. The Title VI claims as asserted against the individually named defendants may

be dismissed with prejudice, to the extent these defendants cannot be held liable under Title VI. However, the court will afford plaintiff the opportunity to amend his complaint with respect to any claims that he may have for discrimination under Title VI against the defendant BTRA. Although plaintiff has not stated a claim as the complaint is written, the court cannot state that he would not be able to amend his complaint with sufficient detail as to (1) whether the BTRA receives federal financial assistance and (2) how the BTRA's alleged actions amounted to discrimination on the basis of plaintiff's race.

Plaintiff should not submit a proposed amended complaint until the District Court rules on this Report and Recommendation. If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a *complete and separate pleading*. Plaintiff must state all of his claims in the new pleading and may *not* incorporate by reference any part of his original complaint. Plaintiff is reminded that claims which the district court dismisses with prejudice should not be raised in any subsequently amended complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING** at this time, and it is

**RECOMMENDED**, that to the extent plaintiff bases his complaint upon the Housing Community Development Act of 1974, those claims be **DISMISSED WITH PREJUDICE** as against all of the named defendants, and it is

**RECOMMENDED**, that to the extent plaintiff bases his complaint upon 24 C.F.R. §§ 245.100-245.110, those claims be **DISMISSED WITH PREJUDICE** as against all of the named defendants, and it is

**RECOMMENDED,** that any claims alleged by plaintiff under Title VI of the Civil Rights Act of 1964 be **DISMISSED WITH PREJUDICE** as against defendants Curtis, Hough, Miller, Mutter, and Redmond, and it is

**RECOMMENDED,** that any claims alleged by plaintiff under Title VI of the Civil Rights Act of 1964 be **DISMISSED WITHOUT PREJUDICE** as against defendant Brighton Towers Resident's Association, and it is

**RECOMMENDED**, that if the District Judge adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED**, that if the district court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any further orders relating to service on the defendants, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, he should wait for the District Court to rule on the above Orders and

Recommendations before plaintiff submits any proposed amended pleading,.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 6, 2022

_____
Andrew T. Baxter
U.S. Magistrate Judge